UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARCO HERNANDEZ PACHECO,

      Plaintiff,

    v.

IMMIGRATION AND CUSTOMS
ENFORCEMENT, BILL ALLEY;
AND  FLORIDA SOFT SIDE
SOUTH,

      Defendants.

Case No. 2:26-cv-679-KCD-DNF

## ORDER

Petitioner Marco Hernandez Pacheco is a Cuban citizen who is subject to a final order of removal. (Doc. 13-3.)[1] He was recently detained by U.S. Immigration and Customs Enforcement ("ICE"). He now seeks a writ of habeas corpus under 28 U.S.C. § 2241. As best the Court can tell from the pro se petition, he argues that his continued detention violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1.) The Government opposes the petition. (Doc. 13.) For the reasons below, the petition is **DENIED WITHOUT PREJUDICE**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Pacheco was paroled into the United States in 2005. (Doc. 13-1 at 1.) By 2008, he had racked up convictions for battery and false imprisonment. (*Id.*) He was placed in removal proceedings and ordered removed to Cuba. (Doc. 13-3.) He waived appeal, making the removal order final. (*Id.*) ICE briefly detained Pacheco before releasing him on an order of supervision in August 2009. (Doc. 13-4.)

On October 30, 2025, immigration enforcement determined it was appropriate to detain Pacheco once more. (Doc. 13-5.) On December 13, 2025, Pacheco was served a notice of revocation and provided an informal interview. (*Id.* at 1-2, 7; Doc. 13-6.) ICE intends to remove him to Mexico. (*Id.* at 3.)

On March 27, 2026, ICE executed a new notice regarding the revocation of Pacheco's supervision and provided him with a second informal interview. (Doc. 13-6 at 1-3.) As the 2026 revocation documents indicate, Pacheco's supervision was revoked under 8 C.F.R. § 241.13(i) based on changed circumstances, namely that there is a significant likelihood of removal in the reasonably foreseeable future. (*Id.*)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of

the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

The Government first claims a provision of the INA—8 U.S.C. § 1252(g)—precludes federal jurisdiction. This Court has already addressed these precise arguments and rejected them for the same reasons they fail today. *See Obando-Vargas v. Assistant Dir.*, No. 2:26-CV-265-KCD-NPM, 2026 WL 796804, at *1-2 (M.D. Fla. Mar. 23, 2026). Section 1252(g) forecloses judicial review of just three discrete actions by the Attorney General, and challenging the procedural mechanics of a detention is not one of them. With the jurisdictional underbrush cleared away, the Court can turn to the merits.

### A. Substantive Due Process

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the

noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 659. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Pacheco cannot satisfy the initial temporal requirement. ICE took him into custody on October 30, 2025. (Doc. 13-5 at 1.) Because he has been detained for five months, he remains within the window in which his detention is presumptively reasonable. *See, e.g., Grigorian v. Bondi*, Case

4

No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

Pacheco seemingly argues that his clean supervision record precludes ICE from revoking his release. (Doc. 1 at 7.) This argument fails. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. Under the rules, ICE may revoke a noncitizen's release to effectuate removal. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, the Government revoked Pacheco's release specifically to enforce his outstanding removal order, gave him notice that they were doing so, and afforded him an informal interview. Returning him to custody thus serves a recognized, legitimate government objective and was done in compliance with the INA's regulations.

### B. Procedural Due Process

Pacheco also contests the procedural mechanics of his re-detention. He complains that ICE locked him back up without providing adequate notice or a meaningful opportunity to be heard. (Doc. 1 at 7.)

The Constitution, of course, demands that before the government strips a person of a protected liberty interest, it must provide fair notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976). But due process is flexible. It "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

In the context of revoking a noncitizen's supervised release, ICE's regulations strike that constitutional balance by guaranteeing written notice and an informal interview that allows the individual to respond. *See* 8 C.F.R. § 241.13(i). These guardrails are undoubtedly sufficient considering the interests at play. And Pacheco offers no authority to the contrary. *See Valdes-Santovenia v. Ripa*, No. 2:25-CV-01063-JES-DNF, 2025 WL 3771264, at *3 (M.D. Fla. Dec. 31, 2025); *cf. Daniels v. Tampa Police Dep't*, No. 8:25-CV-01529-WFJ-AEP, 2025 WL 2959658, at *3 (M.D. Fla. Oct. 20, 2025) ("[P]rocedural due process guarantees fair procedure and requires notice and an opportunity to be heard before any governmental deprivation of a [constitutionally-protected] interest.").

Take notice first. According to the record filed, ICE provided Pacheco with written notice of the revocation on December 13, 2025, and March 27, 2026. (*See* Doc. 13-5 at 1-2; Doc. 13-6 at 1-2.) The paperwork identified the agency's decision and its underlying rationale: there is a significant likelihood of removal in the reasonably foreseeable future. (*Id.* at 1.)

Then comes the opportunity to be heard. The Government claims that ICE sat Pacheco down twice for an informal interview to discuss his return to custody. (Doc. 13-5 at 7; Doc. 13-6 at 3.) Pacheco does not dispute this version of events despite the opportunity to do so. And so the Court treats the Government's unrebutted account as fact.

In the end, Pacheco has failed to show a procedural due process violation tied to the revocation of his release. But even if the agency's initial administrative process was somehow lacking, Pacheco can hardly complain that he is being denied a meaningful opportunity to be heard *now*. Through this very habeas proceeding, he has had a full chance to review the Government's evidence, file his briefs, and press his legal arguments before an Article III court. He has had his say. Because this litigation itself has provided him with the exact procedural safeguards he claims to have missed, the Court declines to use the extraordinary tool of habeas relief to simply wipe the slate clean. "Because habeas is not backward-looking, the process provided now renders forward-looking relief separately inappropriate." *Ladak*

*v. Noem*, No. 1:25-CV-194-H, 2025 WL 3764016, at \*5 (N.D. Tex. Dec. 30, 2025).

## IV. Conclusion

Pacheco's due process claim under *Zadvydas* is not yet ripe, so the habeas petition is **DENIED WITHOUT PREJUDICE** to him refiling a new petition should his current detention exceed the six-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on April 23, 2026.

Kyle C. Dudek
United States District Judge